1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARIYAM AKMAL d/b/a AEGIS IT
SOLUTIONS, INC., et al.,

                    Plaintiffs,

        v.

CINGULAR WIRELESS, INC., et al.,

                    Defendants.

CASE NO. C06-748JLR

ORDER

## I.  INTRODUCTION

This matter comes before the court on a motion for summary judgment from Defendants Cingular Wireless, Inc. ("Cingular"), and TEKsystems, Inc. ("TEKsystems") (Dkt. # 35).  Having reviewed the pleadings and supporting documentation, the court GRANTS Defendants' motion for the reasons set forth below.

## II.  BACKGROUND

### A.    The Contract Between Aegis and TEKsystems

Plaintiff Mariyam Akmal is the president and sole employee of Plaintiff Aegis IT Solutions, Inc. ("Aegis").  Defendant TEKsystems is a provider of information technology and communications staffing and services.  Defendant Cingular entered into

ORDER – 1

an agreement with TEKsystems for TEKsystems' provision of contract personnel.  Foster Decl., Ex. B. ("Primary Supplier Agreement").  In turn, TEKsystems entered into an independent contractor agreement with Aegis for its provision of "supplemental staffing . . . to provide services on a project or temporary basis to Cingular Wireless."  Defs.' Mot., Attach. 1 ("Secondary Supplier Agreement").

Pursuant to the Secondary Supplier Agreement, both TEKsystems and Cingular were entitled to demand the removal of personnel provided by Aegis: "As the employer of such employees, Secondary Supplier [Aegis] will: . . . (vii) at the request of Primary Secondary Supplier [TEKsystems] or Customer [Cingular] for any valid legal reason, remove any of its employees assigned to Customer . . . ."  Attach. 1 ¶ 2.  The Secondary Supplier Agreement incorporates by reference the "terms, conditions, rules, and procedures outlined" in the Primary Supplier Agreement.  Id. ¶ 17.[1]

**B.    Ms. Akmal Begins Working on the Cingular Project**

On May 7, 2005, pursuant to the Secondary Supplier Agreement between Aegis and TEKsystems, TEKsystems assigned Ms. Akmal (as an employee of Aegis) to the Cingular project.  Id.  Ms. Akmal became part of the "Enterprise on Demand" ("EOD") team, under the supervision of Cingular employee Gilberto Ramirez.  Id. ¶ 2.  The EOD's function is to devise interfaces to fit particular users' needs for cellular telephone services.  Ramirez Decl. ¶ 3.

---

[1]The Primary Supplier Agreement confirms Cingular's power of removal and TEKsystems' contractual obligation to comply with such request: "If Cingular requests Supplier or its subcontractor to discontinue furnishing any personnel provided by Supplier or its subcontractor from performing work on Cingular's premises, Supplier shall immediately comply with such request."  Foster Decl., Ex. B ¶ 4.1(a).

ORDER – 2

**C.      Cingular Requests That Teksystems Remove Ms. Akmal from the Project**

Cingular initially allowed members of the EOD team to work a "flextime" schedule – i.e., core hours of 9 a.m. to 5 p.m. with "minor flexibility" to accommodate traffic or other personal time constraints, as long as the delay was communicated to Cingular or TEKsystems.  Id. ¶ 10; Born Decl. ¶ 4.  Ms. Akmal regularly arrived at the office between 10:00 a.m. and 10:30 a.m.  Akmal Decl. at 3.[2]   Mr. Ramirez testified that Ms. Akmal's frequent unavailability impacted her ability to work with the EOD team and effectively perform her job.  Ramirez Decl. ¶ 10-14.

On June 1, 2005, Mr. Ramirez notified the entire EOD team, directly and through TEKsystems, that they were required to be present from 9 a.m. to 5 p.m., with no more "grace period" or flextime, except on a case-by-case basis.  Ramirez Decl. ¶ 13; Born Decl. ¶¶ 11-12, Ex. B.  Mr. Ramirez testified that he imposed this requirement because a number of team members, including Ms. Akmal, were too often unavailable during core hours; the EOD project mandates team members' presence during core hours to discuss projects, and interact with each other and customers.  Ramirez Decl. ¶ 9.

Mr. Ramirez testified that Ms. Akmal continued to arrive late, or failed to come to work at all.  Ramirez  Decl. ¶ 14; Born Decl. ¶¶ 13-14, Ex. A (note regarding Ms. Akmal's absences).  Ms. Akmal's testimony confirms her absences during the month of June.  Akmal Decl. at 4-5, 10-11.  On June 29, 2005, Mr. Ramirez notified TEKsystems that Ms. Akmal was not adequately performing her job due to her unavailability, and that

---

[2]While the court declines Defendants' request to strike Ms. Akmal's declaration, it considers only Ms. Akmal's statements made on personal knowledge.  See Fed. R. Civ. Pro. 56(e).  Defendants also move to strike Ms. Akmal's exhibits as late-filed, unsworn, and unauthenticated.  The court denies this request as moot.  Although the court agrees that Ms. Akmal's submission of exhibits lack authentication and foundation, the court does not rely on these exhibits, which are either immaterial or duplicative of Defendants' submissions.

ORDER – 3

her services were no longer required.  Ramirez Decl. ¶ 17.  TEKsystems terminated Ms.

Akmal's assignment to Cingular's EOD team on June 29, 2005.  Born Decl. ¶¶ 17-18.

**D.     Ms. Akmal Collects Unemployment Benefits**

       Upon termination, Ms. Akmal applied to the Washington State Employment

Security Department ("ESD") for unemployment benefits, which ESD granted on July 7,

2005.  In response to a query as to whether she was eligible for unemployment, a

TEKsystems employee responded that "the project was terminated by the client.  The

client no longer needed her skill set."  Dea Decl. ¶ 4, Ex. A.  In response to further ESD

inquiry, TEKsytems offered the following "corrected" statement: "[Ms. Akmal] was

discharged for lacking the ability to properly perform the required job responsibilities.

There was no misconduct involved."  Foster Decl., Ex. D.³  As a result, ESD granted Ms.

Akmal full unemployment benefits after a brief delay.  Id., Ex. A at 68.

       Plaintiffs initially filed suit in state court, alleging breach of contract, promissory

estoppel, and defamation.  Defendants properly removed the action to this court, and now

seek summary judgment.

## III.  ANALYSIS

       On a motion for summary judgment, the court must draw all inferences from the

admissible evidence in the light most favorable to the non-moving party.  Addisu v. Fred

Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate

where there is no genuine issue of material fact and the moving party is entitled to a

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial

burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v.

_____

       ³TEKsystems communicated these statements through a third-party contractor, TALX uc
eXpress, which is responsible for managing TEKsystems' responses to unemployment inquiries.
Dea Decl. ¶¶ 4, 5.

ORDER – 4

Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial.  Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must present significant and probative evidence to support its claim or defense.  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  When confronted with purely legal questions, the court does not defer to the non-moving party.

**A.      Breach of Contract**

Defendants move for summary judgment on Plaintiffs' breach of contract claim. Plaintiffs allege that Defendants committed a breach of contract whereby they: (1) "unilaterally changed the terms of the contract regarding work schedules and demanded that the plaintiff work a prescribed schedule;" (2) "terminated the plaintiff's contract with less than 5 days notice;" and (3) "failed to pay invoices according to the terms agreed by the parties."  Compl. ¶¶ 12-14.  Although Plaintiffs fail to explicitly identify the contract they allege Defendants breached, the court observes that Plaintiffs attach to their complaint the Secondary Supplier Agreement between Aegis and TEKsystems.  Id., Ex. 1.  Neither Cingular nor Ms. Akmal, individually, is a party to that contract.  Foster Decl., Ex. A. at 68 (Akmal Dep.).

In order to prevail on their breach of contract claim, Plaintiffs must prove that TEKsystems had a specific contractual obligation, that it breached the obligation, and that Plaintiffs sustained damages proximately caused by the breach.  See St. John Med. Ctr. v. State ex. rel. Dept. of Soc. and Health Servs., 38 P.3d 383, 390 (Wash. Ct. App. 2002). Plaintiffs fail to meet their burden to produce significant and probative evidence to support the claim that TEKsystems breached the Secondary Supplier Agreement.

ORDER – 5

Plaintiffs' first theory of breach – that TEKsystems unilaterally changed the terms of the Secondary Supplier Agreement in demanding that Ms. Akmal attend work between 9 a.m. and 5 p.m. – is unavailing.  Plaintiffs offer no evidence to show that the Secondary Supplier Agreement obligated TEKsystems to allow Ms. Akmal to set her own hours.  As Plaintiffs concede, the Secondary Supplier Agreement (or the Primary Agreement, which it incorporates by reference) does not prescribe or guarantee work hours.  See Foster Decl., Ex. E at 2-3.  Although Mr. Ramirez initially permitted the EOD team members some flexibility in their work schedule, Ramirez Decl. ¶ 10, there is no evidence that TEKsystems explicitly promised Ms. Akmal (or generally, any Aegis personnel) a flexible work schedule without regard to Cingular's project requirements.[4]

Rather, Plaintiffs' theory of breach seemingly rests on a general assertion that an independent contractor is entitled to set her own hours.  While this proposition may be true under certain circumstances, Aegis agreed to remove any of its employees assigned to Cingular at the request of TEKsystems or Cingular for any "valid legal reason." Attach. 1 ¶ 2.  Plaintiffs offer no legal or evidentiary support for the proposition that, as a general principle, an independent contractor's autonomy should trump a negotiated contractual right to request the removal of personnel for a valid legal reason.  Even accepting Ms. Akmal's contention that Defendants exaggerate the extent of her absences and tardiness, Akmal Decl. at 2-8, there is no evidence to show that TEKsystems violated

---

[4]While the court need not reach the issue, it further observes that the Secondary Supplier Agreement includes an integration clause providing that the written contract shall be the "entire understanding and agreement between the parties."  See Attach. 1 ¶ 20.  Thus, even if there was evidence of an explicit promise, the parol evidence rule would likely preclude Plaintiffs from introducing a prior or contemporaneous agreement to add to, subtract from, modify, or contradict the terms of the fully integrated written contract.  See DePhillips v. Zolt Constr. Co, 959 P.2d 1104, 1108 (Wash. 1998) (citation omitted).

ORDER – 6

a contractual obligation in acquiescing to Cingular's request to remove Ms. Akmal from the EOD project.

Plaintiffs' next contention that TEKsystems terminated the Secondary Supplier Agreement with less than five days notice, thereby constituting breach, is likewise unsupported by the record.  The Secondary Supplier Agreement provides that TEKsystems "reserves the right to terminate this Agreement upon not less than five (5) days' prior notice at any time without cause during the term of this Agreement."  Attach. 1 ¶ 11.  This provision plainly governs TEKsystems' obligation to provide notice before terminating the Secondary Supplier Agreement.  Ms. Akmal's position that she, as an employee of Aegis, was entitled to five days notice before her own termination, directly contravenes the contractual provision enabling TEKsystems or Cingular to request the removal of any personnel.  See id. ¶ 2.  Indeed, TEKsystems was required to "immediately remove" personnel upon Cingular's request.  Foster Decl., Ex. B ¶ 4.1(a).  Although Ms. Akmal was, at the time, the only Aegis employee working under the Secondary Supplier Agreement, there is no evidence that TEKsystems terminated the contract with Aegis, thus triggering the five days notice provision.  As such, this provision cannot give rise to a breach of contract claim.

Also untenable is Plaintiffs' claim for breach based on TEKsystems' alleged failure to pay invoices per the terms of their agreement.  The Secondary Supplier Agreement requires Aegis to submit invoices to TEKsystems on a monthly basis, providing that "such invoices shall be payable by [TEKsystems] within fifteen (15) days after receipt of payment by [TEKsystems] from [Cingular]. . . ."  Attach. 1, ¶ 11.  The agreement further provides that, notwithstanding this provision, in the event that Aegis's invoices "are more than 30 day's aged from date of receipt of invoice [TEKsystems] agrees to process and pay [Aegis's] properly submitted invoices at that time."  Id.  On

ORDER – 7

June, 24, 2005, Sandra Dea, a TEKsystems employee, sent a letter for Ms. Akmal explaining that payment for an outstanding invoice would be late due to an accounting error.  Dea Decl. ¶ 8, Ex. B.[5]  Even assuming that TEKsytems' delay constitutes breach, Plaintiffs fail to produce evidence to show that they sustained damages proximately caused by such delay.  See Northwest Indep. Forest Mfrs. v. Dep't of Labor and Indus., 899 P.2d 6, 9 (Wash. Ct. App. 1995) (citation omitted) (noting that breach of contract claim is actionable only where plaintiff can show that breach proximately caused damages).  Here, Plaintiffs' allegations concerning damages are not supported by any evidence in the record.  Plaintiffs contend that TEKsystems' delay caused Plaintiffs' bank to issue a stop payment on a check; Plaintiffs, however, do not identify what check was dishonored, explain the reason the bank issued a stop payment, or state what damages they sustained as a result.  See Resp. at 7.  Absent even a rough description of the causal relationship between TEKsystems' late payment and some form of damages, no reasonable juror could find an actionable breach of contract claim arising from delay in providing payment.

Accordingly, the court concludes that Plaintiffs' claims for breach of contract fail as a matter of law.

**B.    Promissory Estoppel**

Defendants also move to dismiss Plaintiffs' promissory estoppel claim arising from their purported reliance on Defendants' promises of a flexible work schedule.  See Compl. ¶¶ 16-20.

---

[5]Plaintiffs submitted the invoice on May 14, 2005.  Dea Decl. ¶ 8.  While payment was due on June 14, 2005, it was not received until June 27, 2005.  Id.  It is not clear to the court why Ms. Akmal required the letter (addressed to "whom it may concern"), which explained that the delay was not Ms. Akmal's "fault."  Id., Ex. B.

ORDER – 8

As a threshold matter, the doctrine of promissory estoppel does not apply where a contract governs. <u>Spectrum Glass Co., Inc. v. Pub. Utility Dist. No. 1 of Snohomish County</u>, 119 P.3d 854 (Wash. Ct. App. 2005) (citations omitted).  Here, the Secondary Supplier Agreement governs the agreement between TEKsystems and Aegis concerning the provision of contract personnel to the Cingular project.  It is undisputed that (1) the Secondary Supplier Agreement does not prescribe or guarantee certain work hours, and (2) TEKsystems and Cingular retained the right to request the removal of Aegis personnel for any valid legal reason.

Moreover, Plaintiffs fail to produce evidence to show that either TEKsystems or Cingular made a clear and definite promise concerning a flexible work schedule.  <u>See Havens v. C & D Plastics, Inc.</u>, 876 P.2d 435, 443 (Wash., 1994) (holding that an at-will employee's promissory estoppel claim requires, inter alia, proof that an employer made a "clear and definite" promise) (citations omitted).  Although Cingular initially permitted somewhat flexible work hours, Ms. Akmal offers no evidence to show that either TEKsystems or Cingular promised her the ability to set her own hours without regard to the project's requirements.[6]  Thus, the court concludes that Plaintiffs fail to carry their burden to produce material and probative evidence tending to support their claim of promissory estoppel.

**C.    Defamation**

Plaintiffs assert a defamation claim arising from statements made by TEKsystems to the ESD in response to queries concerning the reasons for Ms. Akmal's termination. Compl. ¶ 21 ("Upon termination the defendants' made false statements to the State of

---

[6]Ms. Akmal's testimony focuses on her belief that she is entitled to autonomy in setting her own hours; she fails to identify any explicit promises or discussions wherein Defendants guaranteed such autonomy, independent of its effect on Ms. Akmal's work performance.  <u>See</u> Akmal Decl.

ORDER – 9

Washington Employment Security alleging initially that the Plaintiff was terminated for
misconduct and finally that the plaintiff lacked the ability to perform the required job
responsibilities"); Foster Decl., Ex. A at 79-80 (Akmal Dep.).

Defendants seek dismissal of Plaintiffs' defamation claim, arguing that statements
made to the ESD are subject to statutory immunity pursuant to RCW § 4.24.510.  That
statute provides:

> A person who communicates a complaint or information to any branch or
> agency of federal, state, or local government, or to any self-regulatory
> organization that regulates persons involved in the securities or futures business
> and that has been delegated authority by a federal, state, or local government
> agency and is subject to oversight by the delegating agency, is immune from
> civil liability for claims based upon the communication to the agency or
> organization regarding any matter reasonably of concern to that agency or
> organization. A person prevailing upon the defense provided for in this section
> is entitled to recover expenses and reasonable attorneys' fees incurred in
> establishing the defense and in addition shall receive statutory damages of ten
> thousand dollars. Statutory damages may be denied if the court finds that the
> complaint or information was communicated in bad faith.

RCW § 4.24.510.

The transmittal of information to the ESD, a state entity, regarding the reasons for
Ms. Akmal's termination was a communication of information regarding a matter
reasonably of concern to the ESD – i.e., Ms. Akmal's eligibility for unemployment
benefits.  Thus, TEKsystems is immune from civil liability under RCW § 4.24.510 for
claims based on communication to the ESD.  The court therefore grants summary
judgment with respect to Plaintiffs' defamation claim.

Because Defendants have prevailed on the defense provided by RCW § 4.24.510,
Defendants are entitled to recover expenses and attorneys' fees incurred in establishing
the defense.  Within 30 days of the date of this order, Defendants are directed to file a
motion for an award under RCW § 4.24.510.  The court does not reach the issue of
whether Defendants are entitled to statutory damages at this time.  An award of statutory
damages may be denied if the court finds that a complaint or information was

ORDER – 10

communicated in bad faith.  Therefore, if Defendants request statutory damages under RCW § 4.24.510, Plaintiffs may oppose such an award by arguing that Defendants' communication to the ESD was made in bad faith.

**D.     Continuance Pursuant to Federal Rule of Civil Procedure 56(f)**

Plaintiffs contend that further discovery will support their claims.  Federal Rule of Civil Procedure 56(f) gives the court discretion to continue a summary judgment motion if the party opposing the motion can show that she cannot gather the facts necessary to fully oppose the motion. While Plaintiffs do not explicitly move for a Rule 56(f) continuance, they claim that they "expect more material evidence to be received."  See Resp. at 8.  Even construing Plaintiffs' statement as a request under Rule 56(f), Plaintiffs fail to demonstrate that the circumstances warrant a continuance.

Pursuant to Rule 56(f), a court may order a continuance where a party opposing a motion for summary judgment "makes (a) timely application which (b) specifically identifies, (c) relevant information, (d) where there is some basis for believing that the information actually exists."  VISA Int'l Serv. Ass'n v. Bankcard Holders of America, 784 F.2d 1472, 1475 (9th Cir. 1986).  "The burden in on the party seeking additional discovery to proffer sufficient facts to show that the evidence exists, and it would preclude summary judgment."  Chance v. Pac-Tel Teltrac, Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).  Applying these standards, Plaintiffs' cursory statement fails to specifically identify any as yet undiscovered information that would preclude summary judgment.

## IV.   CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion for summary judgment (Dkt. # 35).  Accordingly, the court STRIKES the trial date and all pretrial deadlines in this matter.

ORDER – 11

1    As noted above, if Defendants request attorneys' fees and statutory damages under

2  RCW § 4.24.510, they are directed to file a motion for such an award within 30 days of

3  the date this order.  Plaintiffs may oppose such an award.

4    Dated this 8th day of June, 2007.

5

6

7  _____

   JAMES L. ROBART
8  United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER – 12